IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

ALLAN SCHUBERT,

        Plaintiff,

v.                          CIVIL ACTION NO. 1:24-00055

M. GONZALEZ, et al.,

        Defendants.

## MEMORANDUM OPINION AND ORDER

By Standing Order, this action was referred to United States Magistrate Judge Omar J. Aboulhosn for submission of findings and recommendation regarding disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Magistrate Judge Aboulhosn submitted to the court his Proposed Findings and Recommendation ("PF&R") on December 12, 2025. See ECF No. 60. In that PF&R, he recommends that this court grant defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" and remove this matter from the court's docket.

In accordance with the provisions of 28 U.S.C. § 636(b), the parties were allotted fourteen days and three mailing days to object to the PF&R. After receiving an extension of time to do so, see ECF No. 63, Schubert timely filed objections to the PF&R. See ECF No. 64.

## I.    Background

Schubert, a federal prisoner formerly incarcerated at Federal Correctional Institution ("FCI") McDowell, brings this suit against various Bureau of Prisons ("BOP") officials alleging violations of his constitutional rights pursuant to Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971).  Specifically, plaintiff alleges that defendants violated his First, Fourth, and Fifth Amendment rights in confiscating his personal property and legal documents upon his transfer to FCI McDowell.  Plaintiff also alleges that, in their handling of prisoner mail, defendants routinely disregard federal statutes, the Code of Federal Regulations, and the BOP's own program statements.  According to Schubert, defendants have also improperly searched his property and confiscated other items such as plastic hangers, colored pencils, and a legal dictionary.

Magistrate Judge Aboulhosn recommended dismissing plaintiff's amended complaint because (1) plaintiff failed to exhaust his administrative remedies prior to filing suit; (2) Bivens liability cannot be grounded in a theory of respondeat superior; and (3) his claims would be an improper expansion of Bivens.

2

## II.  Legal Standard

Pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, the court must "make a de novo determination upon the record . . . of any portion of the magistrate judge's disposition to which specific written objection has been made." However, the court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed.  See Thomas v. Arn, 474 U.S. 140, 149–50 (1985).

Furthermore, de novo review is not required and is unnecessary "when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47–48 (4th Cir. 1982); see also United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007) ("[T]o preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection."); McPherson v. Astrue, 605 F. Supp. 2d 744, 749 (S.D.W. Va. 2009) ("[F]ailure to file a specific objection constitutes a waiver of the right to de novo review.").

"A document filed pro se is 'to be liberally construed.'" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).  Specifically as to objections to a PF&R, courts are "under an obligation to read a pro se litigant's objections broadly rather than narrowly."  Beck v. Comm'r of Internal Revenue Serv., No. 2:96CV308, 1997 WL 625499, at *1-2 (W.D.N.C. June 20, 1997) (citing Orpiano, 687 F.2d at 48).  Nevertheless, objections that are "unresponsive to the reasoning contained in the PF&R" are irrelevant and must be overruled.  Kesterson v. Toler, No. 2:09-0085, 2009 WL 2060090, at *1 (S.D.W. Va. July 7, 2009) (citing Orpiano, 687 F.2d at 47).

### III. Discussion

A plaintiff seeking money damages from a federal official for violation of his or her constitutional rights faces an uphill battle.  For starters, there is no federal statute allowing them to do so.  See Mays v. Smith, 70 F.4th 198, 202 (4th Cir. 2023) ("Although § 1983 gives plaintiffs the statutory authority to sue state officials for money damages for constitutional violations, . . . there is no statutory counterpart to sue federal officials.").  In 1971, "[i]n Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388, . . . the [Supreme] Court broke new ground by holding that a person claiming to be the victim of an unlawful arrest and search could

4

bring a Fourth Amendment claim for damages against the responsible agents even though no federal statute authorized such a claim." Hernandez v. Mesa, 589 U.S. 93, 99 (2020). Regarding the origin of the Bivens remedy, our appeals court explained:

> Before Bivens, plaintiffs had the statutory authority under 42 U.S.C. § 1983 to sue state officials for money damages when the officials violated plaintiffs' constitutional rights under color of state law.  But no statutory counterpart existed for plaintiffs to sue federal officials for money damages for violating their constitutional rights.
>
> In Bivens, the Supreme Court held for the first time that even though Congress had not provided any statutory authority for such actions, the plaintiff had an implied cause of action under the Fourth Amendment that entitled him to sue federal officials for money damages arising from an unreasonable search and seizure.  Even though the Fourth Amendment provided no such remedy explicitly, the Court found that a remedy was implied under general princip[les] of federal jurisdiction to redress wrongs that otherwise would have been left unredressed.

Tate v. Harmon, 54 F.4th 839, 843 (4th Cir. 2022).

"The Court subsequently extended Bivens to cover two additional constitutional claims:  in Davis v. Passman, 442 U.S. 28 (1979), a former congressional staffer's Fifth Amendment claim of dismissal based on sex, and in Carlson v. Green, 446 U.S. 14 (1980), a federal prisoner's Eighth Amendment claim for failure to provide adequate medical treatment.  After those decisions, however, the Court changed course." Hernandez, 589 U.S. at 99.  "[I]n the 42 years following Carlson, which was

5

decided in 1980, the Court has consistently rebuffed every request . . . to find implied causes of action against federal officials for money damages under the Constitution." Tate, 54 F.4th at 843 (quotations omitted).  "And in the last 5 years in particular, it has handed down a trilogy of opinions not only expressing regret over its Bivens cases but also demonstrating hostility to any expansion of them."  Id.

Of this change in course, the Court explained:

> Bivens, Davis, and Carlson were the products of an era when the Court routinely inferred causes of action that were not explicit in the text of the provision that was allegedly violated.
>
> * * *
>
> In later years, we came to appreciate more fully the tension between this practice and the Constitution's separation of legislative and judicial power.  The Constitution grants legislative power to Congress; this Court and the lower federal courts, by contrast, have only "judicial Power."  Art. III, § 1. But when a court recognizes an implied claim for damages on the ground that doing so furthers the purpose of the law, the court risks arrogating legislative power.  No law pursues its purposes at all costs.

Hernandez, 589 U.S. at 99-100 (cleaned up).  As the Court succinctly put it, "a federal court's authority to recognize a damages remedy must rest at bottom on a statute enacted by Congress . . . and no statute expressly creates a Bivens remedy."  Id. at 101.

6

Although the Court did not overrule the three Bivens cases, it "did, however, impose a highly restrictive analysis for Bivens cases by (1) narrowing the precedential scope of Bivens, Davis, and Carlson and (2) imposing a broad standard of criteria that, if satisfied, require courts to reject any expansion of Bivens remedies."  Tate, 54 F.4th at 844.  Accordingly, the implied cause of action is carefully restricted to the three types of "Bivens cases" established in Bivens, Davis, and Carlson, and it is a "disfavored judicial activity" for a court to extend the implied cause of action to any "new context." Hernandez, 589 U.S. at 101-02.  When determining whether to allow a Bivens claim to proceed, courts should conduct a two-step inquiry.  First, the court should "ask whether the case presents 'a new Bivens context'—i.e., is it 'meaningful[ly]' different from the three cases in which the Court has implied a damages action."  Egbert v. Boule, 596 U.S. 482, 492 (2022) (quoting Ziglar v. Abbasi, 582 U.S. 120, 139 (2017)).  Second, "if a claim arises in a new context, a Bivens remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'"  Id. (quoting Ziglar, 582 U.S. at 136).

As to the first step, the Supreme Court's "understanding of a new context is broad," requiring only some "meaningful"

difference from a previous Bivens case."  Tate, 54 F.4th at 844 (internal quotation marks and citations omitted).  "If, following the first step, the court finds that a claim arises in a 'new context' and thus is different from the three Bivens cases, it must proceed to the 'second step and ask whether there are any special factors that counsel hesitation about granting the extension' of Bivens."  Id. (quoting Hernandez, 589 U.S. at 102).  Although the court has not "create[d] an exhaustive list of factors that may provide a reason not to extend Bivens," it has explained that "separation-of-powers principles" are "central to [the] analysis."  Hernandez, 589 U.S. at 102.

"Against this now critical condition of Bivens jurisprudence and the caution that the Court has mandated when applying it, courts are clearly warned to act with utmost hesitation when faced with actions that do not fall precisely under Bivens, Davis, or Carlson."  Tate, 54 F.4th at 845.  In summary, the tide has turned against Bivens and "the Supreme Court all but closed the door on Bivens remedies."  Dyer v. Smith, 56 F.4th 271, 277 (4th Cir. 2022).

It is against this backdrop that plaintiff attempts to bring his Bivens claims regarding the alleged confiscation of his personal property by BOP officials and the BOP's handling of prisoner mail.  As the PF&R explained, Schubert's claims assuredly arise in a new context.  The Court has never

8

recognized a Bivens claim based upon a violation of the First Amendment.  And, even though Bivens and Davis were based on violations of the Fourth and Fifth Amendments, the Fourth and Fifth Amendment claims raised herein are markedly different. See Hernandez, 589 U.S. at 103 ("A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized.").

Given that Schubert's claims arise in a new context, the court must consider whether there are special factors that counsel hesitation.  The PF&R expanded on this special factors analysis at great length and the court adopts the reasoning contained therein.  In summary, the court finds that there are several factors that weigh against allowing plaintiff's Bivens claims to proceed, including the Prison Litigation Reform Act's silence on the issue, the existence of alternative remedies such as the BOP's Administrative Remedy Program and the Federal Tort Claims Act, and the consequences of allowing a Bivens claim to go forward in this case.

In his objections, Schubert does not address in any meaningful way the PF&R's recommendation that Bivens should not be extended to encompass his claims and that, therefore, they should be dismissed.  He all but concedes to the PF&R's findings

9

and recommendations in this regard.  Instead, he quarrels with

construing his claims as arising solely under Bivens.

> Plaintiff objects to Magistrate Abhoulsns [sic]
> construction and review of the complaint strictly as a
> "Bivens" claim, and his Findings and Recommendations
> based strictly on Bivens grounds.
>
> Magistrate Abhoulsn [sic] designates sixteen (16)
> pages based on Bivens-related grounds to support the
> recommendation of dismissal, but did not once address
> Plaintiff's claims of this courts grant of
> jurisdiction per Article III, § 2 of the U.S.
> Constitution, or 28 U.S.C. § 1331 (Federal Question),
> nor the reasons and grounds why they do not confer
> jurisdiction.
>
> * * *
>
> Wherefore, Article III, § 2, being first and
> foremost cited in the Superceding [sic] Complaint, and
> 28 U.S.C. § 1331 (Federal Question) secondarily, the
> jurisdiction question as relates to any Bivens
> arguments should fail; because if Bivens fails, there
> should be a reason/s stated by Magistrate O.J.
> Abhoulsn [sic] why Article III, § 2 nor 28 U.S.C. §
> 1331 also does not confer jurisdiction.

ECF No. 64 at 1-2.

Schubert fails to appreciate the difference between federal

jurisdiction and a federal cause of action.  "[T]he

consideration of whether or not there is jurisdiction and

whether or not a cause of action is stated are different

questions."  Cale v. City of Covington, 586 F.2d 311, 314 (4th

Cir. 1978).  "Section[] 1331 . . . of Title 28, United States

Code, . . . vest[s] the court with original jurisdiction;

provided, that a cause of action is stated by looking either to

10

the Constitution of the United States or to other federal statutes.  In other words, Section[] 1331 . . . grant[s] jurisdiction but do[es] not establish a cause of action." Sullens v. Carroll, 308 F. Supp. 311, 312 (M.D. Fl. 1970); see also Bonton v. Texas Dep't of Family and Protective Servs., Case No. 3:24-cv-01571-IM, 2024 WL 4467154, at *2 (D. Or. Oct. 10, 2024) ("Plaintiff cites the federal statute for federal question jurisdiction, 28 U.S.C. § 1331, which is also grounds for jurisdiction and not a cause of action."); Dinkins v. Region Ten CSB, 289 F. Supp.3d 756, 758 n.2 (W.D. Va. 2018) ("§ 1331 is not a cause of action[.]"); Villaplana v. Randazzo, Civil Action No. 16-8767, 2017 WL 5473453, at *2 (D.N.J. Nov. 14, 2017) ("Section 1331(1) concerns subject matter jurisdiction based on a federal question, but it does not provide an independent cause of action."); Schneider v. Kissinger, 310 F. Supp.2d 251, 267 (D.D.C. 2004), aff'd, 412 F.3d 190 (D.C. Cir. 2005) ("[I]t cannot possibly be said that the plaintiffs bring suit for a violation of § 1331, which merely provides federal question jurisdiction and not a cause of action.").  Accordingly, to bring his lawsuit in federal court based upon federal question jurisdiction, Schubert needed to raise a federal question. Relying on Bivens, a federal cause of action, he invoked the court's federal question jurisdiction under 28 U.S.C. § 1331.

The PF&R did not recommend dismissal based on lack of jurisdiction but, rather, on Schubert's failure to state a viable Bivens claim.  "The failure to state a federal claim, either on the pleadings or the facts, is not the same thing as a failure to establish subject matter jurisdiction.  Any non-frivolous assertion of a federal claim suffices to establish federal question jurisdiction, even if that claim is later dismissed on the merits."  Cement Masons Health and Welfare Trust Fund for N. Cal. v. Stone, 197 F.3d 1003, 1008 (9th Cir. 1999); see also East Cent. Illinois Pipe Trades Health and Welfare Fund v. Prather Plumbing & Heating, Inc., 3 F.4th 954, 959 (7th Cir. 2021) ("Without a federal cause of action . . . a federal court cannot exercise federal question jurisdiction and has no authority to adjudicate the dispute under § 1331.").

Neither § 1331 nor the Constitution's grant of Article III powers to the federal courts saves Schubert's complaint from dismissal for failure to state a viable Bivens claim.  Based upon the foregoing, Schubert's objections that his claims should not be dismissed are **OVERRULED.**

As a final matter, there is no merit to Schubert's argument that he may proceed based upon defendants' alleged violation of federal regulations or the BOP's Program Statements.  "Even if the defendants did violate federal prison regulations or BOP program statements, such violations do not themselves give rise

12

to a private cause of action." Familetti v. Ortiz, No. 19-cv-7433 (NLH) (AMD), 2020 WL 5036198, at *3 (D.N.J. Aug. 26, 2020) (citation and quotation marks omitted); see also Cole v. United States Dep't of Just., Case No. 17-cv-02471 (CRC), 2018 WL 4853900, at *2 (D.D.C. Oct. 5, 2018) ("Cole does not have a private cause of action to sue for a violation of non-binding BOP internal guidance."); Christensen v. United States, Civil No. 5:11-321-KKC, 2013 WL 4521040, at *2 (E.D. Ky. Aug. 26, 2013) ("The BOP's Program Statements are not 'laws' which may be broken.  Rather, they are merely internal agency guidelines and manuals . . . .  Accordingly, they do not carry the force of law, and do not create substantive rights that may be enforced by any person.  Because a federal employee's failure to adhere to a Program Statement does not constitute a violation of federal law, any 'claim' under a Program Statement fails as a matter of law.") (internal citations omitted); Frost v. Dewalt, No. 07-CV-30-JMH, 2007 WL 542388, at *5 (E.D. Ky. Feb. 15, 2007) (BOP's Program Statements "do not create a federal cause of action for a prisoner but instead serve as internal guidelines."); Bigbee v. United States, 359 F. Supp.2d 806, 810 (W.D. Wisc. 2005) ("Inmates have the right to expect prison officials to follow Bureau of Prisons' procedures.  However, plaintiff does not have a cause of action for money damages under the regulations, program statement, or institution

13

supplement."); Brown v. Scibana, No. 03-C-586-C, 2003 WL 23208947, at *2 (W.D. Wisc. Dec. 12, 2003) (holding that federal inmate could not use a writ of mandamus under 28 U.S.C. § 1361 to sue for enforcement of BOP's program statements and policies because "Bureau of Prisons program statements do not create a federal cause of action for a prisoner; rather, they serve as internal guidelines for the government agency").  Furthermore, "'[a] violation of a prison regulation without more does not state a constitutional violation.'"  Kates v. Packer, CIVIL ACTION NO. 3:13-CV-01525, 2016 WL 1221736, at *5 (M.D. Pa. Mar. 29, 2016) (quoting Gibson v. Fed. Bureau of Prisons, 121 F. App'x 549, 511, 2004 WL 3019779 (5th Cir. Dec. 30, 2004)); see also White v. Gutierrez, No. CV-23-00180-TUC-JCH, 2024 WL 4452961, at *3 (D. Ariz. Oct. 9, 2024) ("Petitioner claims not that the UDC or USP-Tuscon violated his constitutional rights, but that they violated BOP policy.  This does not create a cause of action reviewable by a federal court.").

Because the merits of Schubert's claim are straightforward, the court need not reach the exhaustion issue.  See Mays v. Smith, 70 F.4th 198, 201 n.2 (4th Cir. 2023) ("Because administrative exhaustion in this context is not a jurisdictional requirement, we can proceed directly to the merits of Mays's Bivens claims."); Santiago-Lugo v. Warden, 785 F.3d 467, 475 (11th Cir. 2015) ("And because exhaustion is non-

14

jurisdictional, even when the defense has been preserved and asserted by the respondent throughout the proceeding, a court may skip over the exhaustion issue if it is easier to deny (not grant, of course, but deny) the petition on the merits without reaching the exhaustion question."); Coffie v. Warden, FCI Cumberland, Civ. No. DLB-24-2837, 2025 WL 2695716, at *4 (D. Md. Sept. 22, 2025) ("The Court need not decide whether Coffie Gonzalez has properly exhausted his administrative remedies because his petition fails on the merits and must be dismissed.").

### IV.   Conclusion

The court has reviewed the record, the magistrate judge's PF&R, and plaintiff's objections.  For the reasons discussed above, the objections are **OVERRULED** and the court adopts the Findings and Recommendation of Magistrate Judge Aboulhosn. Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" is **GRANTED** and the Clerk is directed to remove this case from the court's active docket.

**IT IS SO ORDERED** this 30th day of March, 2026.

ENTER:

David A. Faber
Senior United States District Judge